CURTICE BROS. CO. v. BARNARD et al.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

No. 1,991.

1. APPEAL AND ERROR (§§ 901, 1017*)—FINDINGS OF MASTER—REVIEW.

Findings of fact by a master may not be set aside, in the absence of convincing evidence to the contrary; the burden resting on appellant to show that the master's report is erroneous and not justified by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1771, 3670, 3911, 3961, 3996–4005; Dec. Dig. §§ 901, 1017.*]

2. FOOD (§ 1*)—REGULATION—LEGISLATIVE AUTHORITY—BENZOATE OF SODA.

Whether the use of benzoate of soda as a food preservative is harmful, being still an open scientific question, the Legislature has power to pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hibit its use in the exercise of its police power to preserve the public health.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

3. CONSTITUTIONAL LAW (§ 278*)—POLICE POWER—FOOD PRESERVATIVES—REGULATION—STATE LAWS—DUE PROCESS OF LAW—"ADULTERATED."

Laws Ind. 1907, c. 104, § 2, par. 7, provides that if prepared food contains any added substance except common table salt, saltpeter, cane sugar, vinegar, spices, etc., or other harmless preservatives whose use is authorized by the State Board of Health, it shall be deemed adulterated, and a rule adopted by the State Board of Health prohibits the use of benzoate of soda as a food preservative. *Held*, a proper exercise of police power, and was not a violation of the federal or state Constitution, as depriving food manufacturers of their property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 763, 765, 767–770, 772–777, 779–806, 808–810, 816–824, 907–924, 942; Dec. Dig. § 278.*

For other definitions, see Words and Phrases, vol. 1, pp. 210–212.]

4. FOOD (§ 1*)—REGULATION—STATUTES—CONSTRUCTION—POWERS OF BOARD OF HEALTH.

Laws Ind. 1907, c. 104, § 2, par. 7, provides that for the purposes of the act an article shall be deemed adulterated if it contains any antiseptic or preservative substance except common table salt, saltpeter, cane sugar, vinegar, spices, or other harmless preservative the use of which is authorized by the State Board of Health, and that the board shall adopt such rules as may be necessary to enforce the act, and regulating minimum standards for food and drugs, defining specific adulteration and declaring proper methods of collecting and examining drugs and articles of food, and a violation of such rules shall be punished, etc. *Held* that such act did not authorize the Board of Health to exclude the use of any preservative which it finds to be harmless, but only authorized it to distinguish between preservatives, and prohibit the use of those found to be harmful.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

5. FOOD (§ 5*)—ADULTERATION—"COMMON SALT"—"CANE SUGAR."

Laws Ind. 1907, c. 104, § 2, par. 7, provides that an article of food shall be deemed adulterated if it contains any added antiseptic or preservative substance except common table salt, saltpeter, cane sugar, vinegar, spices, or other harmless preservative, the use of which is authorized by the State Board of Health. *Held*, that the words "common salt" and "cane sugar" were used generically, and applied to and included beet sugar and rock salt.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

6. CONSTITUTIONAL LAW (§ 62*)—DEPARTMENTS OF GOVERNMENT—LEGISLATIVE POWER—BOARD OF HEALTH.

Laws Ind. 1907, c. 104, § 2, par. 7, in so far as it authorizes the State Board of Health to adopt rules to enforce the act with reference to the manufacture of foods and drugs, and to provide minimum standards, defining specific adulteration and declaring proper methods of collecting and examining foods and drugs, etc., was not unconstitutional as conferring legislative power on the State Board of Health.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit by the Curtice Bros. Company against Harry E. Barnard and others. Judgment for defendants, and complainant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appellant and another filed their sworn bill against the Food and Drug Commissioner and the members of the State Board of Health of the state of Indiana, praying that they be restrained from enforcing their determination to prosecute criminally those who sold complainants' goods containing benzoate of soda, and from publishing statements that such sale was illegal, and from criminally prosecuting complainants, from intimidating dealers, and from passing any rule forbidding the use of benzoate of soda in catsup or bulk sweet pickles. The bill charges that the use of this article is harmless and very desirable in such manufactures as a preservative, that complainants have large sums invested in such business which will be lost if said proposed enforcement of said rule is carried out with reference to the manufacture of catsup and bulk sweet pickles, and that defendants have notified orators and persons dealing with them that such manufactures do not comply with the Indiana statutes, and that any person found selling foods so containing benzoate of soda in Indiana will be criminally prosecuted. The bill further alleges that defendants purport to be acting under chapter 104 of the laws of Indiana for the year 1907, wherein by section 1 the sale of impure and misbranded foods within the meaning of the act is forbidden. By paragraph 7 of section 2 thereof it is provided that, "If it [a food] contains any added substance except common table salt, saltpeter, cane sugar, vinegar, spices, * * * or other harmless preservatives whose use is authorized by the State Board of Health," it shall be deemed adulterated. By section 7 the State Board of Health is required to adopt such rules fixing the minimum standard as may be necessary to enforce the act, regulating minimum standards for food and drugs and defining specific adulteration. Said section also provides that the violation of such rules shall be punished as set forth in section 10 of the act, by fine for the first two violations, and fine and imprisonment for further violations. The bill further charges that the act was never legally published, and that said section 2, by exclusion, prohibits the use of benzoate of soda in foods. The bill further charges that complainants are advised that said chapter 104 of the Laws of 1907, and particularly said enumerated sections, are unconstitutional and void, especially said section 2 thereof, in that: (1) It is contrary to the fourteenth amendment to the Constitution of the United States; (2) said chapter, and especially said section 7 thereof, vests legislative power in the State Board of Health, contrary to the Constitution of Indiana; (3) it makes the United States pharmacopœia and the act of Congress of June 30, 1906 (34 Stat. 168, c. 3915 [U. S. Comp. St. Supp. 1911, p. 1354]), a part thereof by reference, contrary to the Indiana Constitution; (4) it attempts to deprive orators of their property without due process of law and due compensation, contrary to the Indiana Constitution. The bill further charges that said board has adopted rules which in effect prohibit the use of benzoate of soda, and that the promulgation of said rules is unreasonable and an abuse of power, and that defendants have conspired with their servants and employés to ruin orators' business in Indiana, and that by threats of prosecution orators' business in said state will be ruined, unless defendants be restrained. The bill charges that orators make many shipments of such goods into said state, whereby a multitude of harassments will arise, amounting to a confiscation of orators' property rights if said rules are enforced. Orators further allege that their manufactures are pure and wholesome and do not violate the constitutional laws of Indiana. The bill thereupon asks for a temporary injunction, restraining defendants, their officers and agents, from said acts. Answers were filed denying all conspiracy and all intention to injure orators, denying that benzoate of soda is healthful or necessary, denying the allegations of the bill with regard to confiscation, denying that chapter 104 aforesaid is unconstitutional, admitting their establishment of said rule in accordance with said act. Replication was filed and said cause referred to the master, who filed his report, together with the evidence adduced, finding as matter of fact that it is not an accepted fact that in the scientific world benzoate of soda, even in limited quantities, when ingested in the food of human beings, is harmless, and, as matter of law: (1) That such being the case, the state of Indiana has the power to enact a law forbidding its use in any quantity in food products; and (2) that said chapter 104 of the Acts of 1907, and each section thereof, is not violative of the Constitution of

either the state of Indiana or the United States, and recommending that said bill be dismissed at complainants' cost. Numerous exceptions to the report were offered, all of which were overruled by the court. Thereupon the court dismissed said bill for want of equity, from which decree appellant took this appeal. The errors assigned are numerous, but so far as they have been deemed important, may be summed up as follows, viz: (1) That the court held that the act of the state of Indiana approved March 4, 1907, being chapter 104 of the Acts of 1907, is not, nor is any of its sections, violative of any provision of the Constitution of the state of Indiana or of the Constitution of the United States or its amendments; (2) that the court did not find that benzoate of soda as used by appellant was harmless beyond a reasonable doubt, and so conceded to be in the scientific world; (3) that the court approved the master's report.

Willis Baldwin, of Monroe, Mich., and E. O. Grosvenor, of Detroit, Mich. (John Barton Payne, of Chicago, Ill., of counsel), for appellant.

Thomas M. Honan, Atty. Gen. of Indiana, and William H. Thompson, James E. McCullough, and Miller, Shirley, Miller & Thompson, all of Indianapolis, Ind., for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1, 2] From the evidence and the master's report thereon, it is evident that the question of the harmfulness and harmlessness of benzoate of soda is, as yet, an open one in the scientific world. While the voluminous record of this case deals largely with that question, it is a question of fact. The finding of fact of the master may not, in the absence of convincing evidence to the contrary, be set aside. To show that the report is erroneous and not justified by the evidence, the burden rests upon appellant. That burden is not convincingly sustained by the record. We, therefore, start with the proposition that the question is yet an open one in the scientific world and therefore an open one for the purposes of this hearing. This being so, it was within the power of the Indiana Legislature to prohibit the use of benzoate of soda in the preparation of foods.

In Laurel Hill Cemetery v. City & County of San Francisco, 216 U. S. 358–365, 30 Sup. Ct. 301, 302 (54 L. Ed. 515), the court was considering an action brought to restrain the appellees from enforcing an ordinance forbidding the burial of the dead within the city and county limits. The complaint set up that the ordinance violated the fourteenth amendment to the Constitution of the United States. Speaking through Mr. Justice Holmes, the court says:

"To aid its contention and in support of the averment that its cemetery, although now bordered by many dwellings, is in no way harmful, the plaintiff refers to opinions of scientific men who have maintained that the popular belief is a superstition. Of these we are asked, by implication, to take judicial notice, to adopt them, and on the strength of our acceptance to declare the foundation of the ordinance a mistake and the ordinance void. It may be, in a matter of this kind, where the finding of fact is merely a premise to laying down a rule of law, that this court has power to form its own judgment without the aid of a jury. Prentis v. Atlantic Coast Line, 211 U. S. 210, 227 [29 Sup. Ct. 67, 53 L. Ed. 150]. But whatever the tribunal, in questions of this kind, great caution must be used in overruling the decision of the local authorities, or in allowing it to be overruled. No doubt this court has gone a certain distance in that direction. Dobbins v. Los Angeles, 195 U.

S. 223 [25 Sup. Ct. 18, 49 L. Ed. 169]; Lochner v. New York, 198 U. S. 45, 58 [25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133] et seq. But it has expressed through the mouth of the same judge who delivered the judgment in the case last cited the great reluctance that it feels to interfere with the deliberate decisions of the highest court of the state whose people are directly concerned. Welch v. Swasey, 214 U. S. 91, 106 [29 Sup. Ct. 567, 53 L. Ed. 923]. The reluctance must be redoubled when, as here, the opinion of that court confirms a specific determination concerning the same spot previously reached by the body that made the law. See French v. Barber Asphalt Paving Co., 181 U. S. 324, 341 [21 Sup. Ct. 625, 45 L. Ed. 879]; Smith v. Worcester, 182 Mass. 232, 234, 235 [65 N. E. 40, 59 L. R. A. 728].

"But the propriety of deferring a good deal to the tribunals on the spot' is not the only ground for caution. If every member of this bench clearly agreed that burying grounds were centers of safety, and thought the board of supervisors and the Supreme Court of California wholly wrong, it would not dispose of the case. There are other things to be considered. Opinion still may be divided; and if, on the hypothesis that the danger is real, the ordinance would be valid, we should not overthrow it merely because of our adherence to the other belief. Similar arguments were pressed upon this court with regard to vaccination, but they did not prevail. On the contrary, evidence that vaccination was deleterious was held properly to have been excluded. Jacobson v. Massachusetts, 197 U. S. 11 [25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765]; s. c., 183 Mass. 242 [66 N. E. 719, 67 L. R. A. 935]. See Otis v. Parker, 187 U. S. 606, 608, 609 [23 Sup. Ct. 168, 47 L. Ed. 323]."

In Red "C" Oil Co. v. North Carolina, 222 U. S. 392, 32 Sup. Ct. 154, 56 L. Ed. 240, the court had before it a state statute requiring the inspection of kerosene and other illuminating oils, and fixing a fee of one-half cent per gallon to be paid to the Commissioner of Agriculture for the purpose of defraying expenses connected with the inspecting, testing, and analyzing of the oil. The oil company filed its bill against the State Board of Agriculture to restrain enforcement of the statute, charging an abuse of the police power. The court quoted approvingly the language of the trial judge, where he says:

"While there is much diversity of opinion in respect to the danger of explosion from the use of kerosene oil and of the power to ascertain its illuminating capacity, it is evident that the question has not so far passed beyond the domain of debate, that the Legislature may not subject it to reasonable inspection before permitting the sale in the state. The court cannot say that such a law has no reasonable relation to the public safety or welfare."

In State v. Layton, 160 Mo. 474, 61 S. W. 171, 62 L. R. A. 163, 83 Am. St. Rep. 487, wherein was involved the right of the state to prohibit the use of alum in baking powder, the court says:

"What, then, is the test when the constitutionality of an act of the Legislature is assailed as invading the right of the citizen to use his faculties in the production of an article for sale for food or drink? We answer that if it be an article so universally conceded to be wholesome and innocuous that the court may take judicial notice of it, the Legislature under the Constitution has no right to absolutely prohibit it; but if there is a dispute as to the fact of its wholesomeness for food or drink, then the Legislature can either regulate or prohibit it."

This case was approved in City of St. Louis v. Joseph H. Schuler, 190 Mo. 524, 89 S. W. 621, 1 L. R. A. (N. S.) 928.

Manifestly, if the Legislature of Indiana in the reasonable exercise of its police power, and for the welfare of its citizens, condemns as an adulteration the use of benzoate of soda in the preparation of ar-

209 F.—38

ticles of food, then, in the absence of a general acceptance of the proposition by the scientific world that such is not the case, there can, as to that matter, arise no question of the violation of the Constitution of the United States, or, as here charged, of the state of Indiana. When deemed necessary by the Legislature for the public health, property rights such as here involved must give way. Buttfield v. Stranahan, 192 U. S. 470–493, 24 Sup. Ct. 349, 48 L. Ed. 525.

[3] There remains yet to be considered appellant's contention that paragraph 7 of section 2 and section 7 of said chapter 104 vest legislative power in the Indiana State Board of Health, because they confer upon said board the power to authorize the use of other harmless preservatives and to adopt rules regulating minimum standards for food and drugs. So far as material here, the language of the statute is as follows, viz.:

"That for the purpose of this act an article shall be deemed as adulterated. * * * If it contains any added antiseptic or preservative substance except common table salt, saltpeter, cane sugar, vinegar, spices, * * * or other harmless preservatives whose use is authorized by the State Board of Health * * * The State Board of Health shall adopt such rules as may be necessary to enforce this act, and shall adopt rules regulating minimum standards for food and drugs, defining specific adulteration and declaring proper methods of collecting and examining drugs and articles of food, and the violation of said rules shall be punished, on conviction, as set forth in section 10 of this act."

[4] It is the contention of appellant that the language of said paragraph 7 of section 2 authorizes the State Board of Health to distinguish as between harmless preservatives, permitting the use of some and prohibiting the use of others arbitrarily. Such, however, is not our construction of that paragraph. Applying the familiar rule of construction which requires that when a statute may have two meanings that one will be adopted which will relieve it from constitutional objection, we are of opinion that the statute confers upon the board power to ascertain and declare what is a harmless preservative, and that it is not authorized thereby to exclude the use of any preservative which it finds to be harmless. Nor may it arbitrarily denounce that as harmful which is harmless. Appellant's contention that the language of said paragraph 7 of section 2 of said act excludes the use of beet sugar and rock salt is not justified by a fair construction of the language used, since the terms "common table salt" and "cane sugar" are used generically and apply to and include beet sugar and rock salt.

[5, 6] Can it be said that, construed as above, the statute is violative of the Constitution because it attempts to confer authority upon the State Board of Health? The question is by no means a new one. In Union Bridge Co. v. United States, 204 U. S. 364–388, 27 Sup. Ct. 367, 375 (51 L. Ed. 523), it was sought to have the court declare unconstitutional section 18 of the rivers and harbor act of 1899, which authorized the Secretary of War to require bridges over navigable waters to be altered or removed whenever he had reason to believe the same to be an unreasonable obstruction to the free navigation of such waters. The court, through Mr. Justice Harlan, said:

"We are of opinion that the act in question is not unconstitutional as conferring upon the Secretary of War powers of such nature that they could not be delegated to him by Congress."

In Buttfield v. Stranahan, 192 U. S. 470–496, 24 Sup. Ct. 349, 355 (48 L. Ed. 525), the court held that the tea inspection act approved March 2, 1897 (29 Stat. 604, c. 358 [U. S. Comp. St. 1901, p. 3194]), which authorized the Secretary of the Treasury to appoint a tea inspection board upon whose recommendation he should fix uniform standards for teas imported into the United States, and required that the importation of all teas found to be inferior to such standard should be prohibited, was not repugnant to the Constitution. "To deny the power of Congress to delegate such a duty," says the court, "would, in effect, amount but to declaring that the plenary power vested in Congress to regulate foreign commerce could not be efficaciously exerted."

By an act passed March 8, 1909 (Laws 1909, c. 554), the Legislature of North Carolina provided for the inspection, under the control of the State Board of Agriculture, of all kerosene or other illuminating oils sold or offered for sale in that state. This act was called in question in Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, supra, as attempting to delegate to the Board of Agriculture the exercise of legislative powers. The court, speaking through Mr. Chief Justice White, held that the claim that legislative powers were delegated was untenable (citing Buttfield v. Stranahan, supra; Union Bridge Co. v. United States, supra; St. Louis, Iron Mountain & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563)..

The Indiana court has, in Blue v. Beach, 155 Ind. 121–123, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195, held that the statute of 1894, which authorized the State Board of Health to adopt rules and by-laws to prevent the spread of contagious and infectious diseases, was constitutional and not an improper delegation of authority (citing a number of cases).

The case of Isenhour v. State of Indiana, 157 Ind. 517–525, 62 N. E. 40 (87 Am. St. Rep. 228), passed upon the food law of 1899 (Laws 1899, c. 121), which, so far as the question now under consideration is concerned, is substantially similar to the act herein involved. "The classification of these subjects and the prescribing of rules by which they may be determined is not legislation," says the court, "but merely the exercise of administrative power."

It is therefore apparent that the position taken by appellant with reference to the constitutionality of the act in question is without merit, as are also the other matters covered by the assignment of errors.

The decree of the District Court is affirmed.