FERNALD WOODWARD CO. v. CONWAY CO. (three cases).

(District Court, D. New Hampshire. February 21, 1916.)

Nos. 555, 556, and 569.

1. APPEAL AND ERROR ☞1017—REPORT OF REFEREE—REVIEW—QUESTIONS OF FACT.

The finding of a tribunal, whether it be a master, a referee, or a judge, who sees and hears the witnesses and is in the environment of an oral hearing, is entitled to great weight, and great caution should be exercised by any tribunal having the authority, or being under the duty to review such finding, in disturbing it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3911, 3961, 3996–4005; Dec. Dig. ☞1017.]

2. CONTRACTS ☞319—RIGHT OF ACTION FOR BREACH CAUSED BY OTHER PARTY'S BREACH.

Where plaintiffs abandoned their operations under a logging contract by reason of embarrassment resulting from defendant's failure to make payments and advancements as agreed, there was no ground for recoupment by defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1458, 1476, 1477, 1479, 1493–1507; Dec. Dig. ☞319.]

3. CONTRACTS ☞319—EXCUSES FOR PERFORMANCE—BREACH BY OTHER PARTY.

Where plaintiffs were unable to perform a contract for the removal of timber from a large tract of land requiring operations extending over several years, because of defendant's failure to make payments in conformity to their agreements, such failure was a breach which justified plaintiffs in not performing.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1458, 1476, 1477, 1479, 1493–1507; Dec. Dig. ☞319.]

4. WORK AND LABOR ☞14—BREACH OF CONTRACT—RECOVERY ON QUANTUM MERUIT.

Where a contract for the removal of timber from a large tract of land provided that plaintiffs might construct roads and camps upon the lands, and make any other reasonable use of the lands for the purpose of carrying out the terms of the contract, but that any roads, camps, or other improvements so made should remain the property of defendant, and defendant broke the contract by failing to make agreed payments, and plaintiffs' abandonment of operations because of their inability to perform on account of the failure to make such payments was warrantable, plaintiffs were entitled to recover on a quantum meruit the value of the improvements so made.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 29–33; Dec. Dig. ☞14; Contracts, Cent. Dig. §§ 1500, 1554.]

5. WORK AND LABOR ☞14—BREACH OF CONTRACT—RECOVERY ON QUANTUM MERUIT.

Where, however, plaintiffs divided the territory from which the timber was to be removed, and let to subcontractors the work of removing the timber from parts thereof, and the subcontractors built camps and bridges, and made roads upon the territory operated by them, the cost thereof being included in the contract price paid them by plaintiffs, plaintiffs could not recover for the improvements made by their subcontractors.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 29–33; Dec. Dig. ☞14; Contracts, Cent. Dig. §§ 1500, 1554.]

6. CONTRACTS ☞319—BREACH—MEASURE OF DAMAGES.

Where plaintiffs justifiably ceased operations under a contract for the removal of timber from a large tract of·land at specified prices per

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thousand for different kinds of the wood, because of defendant's failure to make payments as agreed, they were entitled to recover for the work done according to contract prices and values established by the parties themselves.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1458, 1476, 1477, 1479, 1493–1507; Dec. Dig. ☞319.]

At Law. Three actions by the Fernald Woodward Company against the Conway Company. On referee's report on motions directed against his findings and rulings. Judgments for plaintiff.

Drew, Shurtleff, Morris & Oakes, of Lancaster, N. H., for plaintiff.

Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., for defendant.

ALDRICH, District Judge. Here are three cases which were heard together before the Honorable Edwin G. Eastman as referee, and which were heard by me upon the referee's report upon motions directed against his findings and rulings.

There was a contract made on October 12, 1906, between one Ozman W. Fernald and the Publishers' Paper Company, which is a Maine corporation. This contract contemplated extensive logging operations in the towns of Albany, Waterville, and Livermore in the Swift river valley in New Hampshire. The territory described included a large tract of timber land, and it was understood that several years' operations would be required to remove all the softwood and such part of the hardwood timber as was described in the contract.

The enterprise set on foot by the contract of October 12, 1906, involved the construction of railroads, logging roads, bridges, camps, storehouses, other buildings, and the doing of the various things incident to an extensive logging proposition. Under the contract of October 12th, and supplemental agreements, active operations were carried on for something like two years, when the plaintiffs abandoned the work.

Speaking generally of the contract, it was the usual operating contract under which active parties in the woods received so much per thousand for softwood and so much for hardwood cut, hauled, and loaded upon cars.

The referee whose report is under consideration, was appointed upon consent of the parties, and had hearings at various times during a period of a year and a half, or such a matter, in connection with which a view of the territory in question was had, and a large number of witnesses were heard, and the evidence, stenographically reported, covers something like 1,700 typewritten pages.

The plaintiffs present 7 exceptions to rulings made in the course of the trial, and the defendant raises 28 points against rulings, findings, and failures to find; yet, in view of it all, the rights of the parties largely depend upon certain specific findings of the referee and upon a certain clause in the contract. It is well enough to state these at the outset. They are as follows:

Clause 5: "The first party agrees to permit the second party to construct additional roads and camps upon said lands cutting from said lands for this

purpose whenever practicable hardwood rather than softwood, and to make any other reasonable use of said lands for the purpose of carrying out the terms of this contract, but it is expressly understood and agreed that any roads, camps, or other improvements so made shall be and remain the property of the first party during and subsequent to the life of this contract, except that the second party shall have the right to remove the storehouse erected by it at Conway and to take up and remove any rails, railroad fixtures, or machinery which it may place upon said lands for the purpose of carrying out the provisions hereof, when said rails, railroad fixtures, or machinery shall be of no further use in the carrying out of this contract."

Such is the clause, and the findings to which I refer are as follows:

"There was considerable conflict in the evidence as to what caused the plaintiffs to cease operations, but I find the cause to have been the failure on the part of the defendants to make payments and advancements in conformity with the aforesaid contracts, for the work done by the plaintiffs thereunder."

"I find as a fact that the plaintiffs were unable to perform the contract of October 12, 1906, and the supplements thereto because of the failure of the defendants to make payments and advancements to the plaintiffs in conformity with the provisions of said contract and said supplement, and I rule as a matter of law that the defendants are not entitled to recoup for any alleged damages occasioned by the failure of the plaintiffs to perform said contracts."

The defendant claims that the plaintiffs are not entitled to recover at all, because they say they unwarrantably abandoned the operations.

The first of these three cases, and the one which is now under consideration, as originally started, was an action to recover damages in the nature of profits lost through alleged breach of contract by the landowner.

Passing an unnecessary account of preliminaries, that case was changed into one with a declaration in quantum meruit against which the defendant directed a plea of recoupment.

Under the quantum meruit count, the plaintiffs seek to recover the value of improvements of the kind covered by clause 5 to which I have referred, and which it is claimed were beneficial to the landowners.

There was a supplemental contract, an assignment, and there were letters containing conditions and modifications of the original contract; but I do not see that they have any special pertinency to the particular questions which I am now considering.

Under the original contract of October 12, 1906, large sums of money had been expended in the construction of roads and camps in and through the territory covered by the contract; but such expenditures were made under the following circumstances:

For the purpose of facilitating the operations, the territory in question was divided into 15 parts, and the operations in eleven of the subdivisions were let to subcontractors who, by the terms of the contracts between them and the plaintiffs, built camps, bridges, and made the roads upon the territory operated by them; the cost of the roads and the camps being included in the contract price paid them by the plaintiffs. In the other four, the roads and camps and other improvements were made by the plaintiffs themselves.

The referee has found that the reasonable value of the improve-

ments upon the entire territory was $16,285, and if as a matter of law, upon the facts and findings, the plaintiffs are entitled to recover, that they should have that sum, with interest from the date of the writ, and if as a matter of law they are not entitled to recover for all the improvements, but only for the improvements made by them personally, that they should have under their quantum meruit count $5,-523.02.

Under the referee's finding, the defendant's objections and exceptions, and the plaintiffs' claim, two questions are raised: First, whether the plaintiffs are entitled to recover anything (I am now speaking of No. 555); and, if so, whether it shall be for all the improvements, including those made by the subcontractors or only for such as were made by themselves.

The referee has found that the plaintiffs ceased operations, because the defendant failed to make payments and advancements which they should have made, and for that reason that the plaintiffs were unable to perform the contract.

The defendant moves for judgment notwithstanding this finding, because it says it is not supported by the evidence, or, to be more exact, perhaps, that there is no evidence to support it, and, further, that failure to make payments in and of itself is not a justification for abandoning a contract.

[1] Upon the question whether there is sufficient evidence or any evidence to justify a distinct finding like the one here, I must keep in mind the well-established rule that the finding of a tribunal, whether it be a master, a referee, or a judge, who sees and hears the witnesses, and who is in the environment of an oral hearing, is entitled to great weight, and that any tribunal which has the authority, and is under the duty, to review a finding of fact, should approach the question of its disturbance with great caution. It has been frequently said, and more frequently in modern days than in the older days, that in order to justify rejecting the finding of one who sees the witnesses and gets hold of all the circumstances incident to an oral trial, it must clearly appear that error has been made. The most recent expression in that line is that of the Supreme Court in the case of Teodora Arana de Villanueva v. Mariano P. Villanueva, 239 U. S. 293, 36 Sup. Ct. 109, 60 L. Ed. ——, in an opinion handed down December 6, 1915, in which Chief Justice White says, in effect, that the circumstances must be such as to give rise to that conviction of clear error which must be entertained in order to authorize a reversal of the findings. See, also, Bank v. Shackelford, 239 U. S. 81, 36 Sup. Ct. 17, 60 L. Ed. ——.

This rule is based upon considerations of public policy which require that litigation should come to an end, and upon the supposition that as among masters, referees, and judges of equal experience that the one who sees the witnesses and hears all the evidence is more likely to be right than the one who only hears arguments and examines the papers in a case.

The referee in this case was selected by the parties. He is a man of ability, and one who is careful and painstaking in his work.

The defendant's contention is that there is nothing except the evi-

dence contained in the so-called agreed account which bears upon this question of failure of payment, but the referee says:

"There was considerable conflict in the evidence as to what caused the plaintiffs to cease operations, but I find the cause to have been the failure on the part of the defendants to make payments and advancements," etc.

I accept such statement of the referee in a complicated case like this as one entitled to great weight.

While I do not wish it to be understood that I have read all of the evidence in this case, I do say that I have looked into it enough to see that there were disputes as to what was due, and other circumstances tending to show that the plaintiffs were embarrassed by reason of the financial condition for which the defendant was in a sense responsible, and that the circumstances are such as to put it beyond me to say that the referee was clearly in error in the finding which he made.

[2, 3] The referee having found that the plaintiffs abandoned their operations by reason of embarrassment resulting from nonpayment, it follows that there is no ground for recoupment. The point is taken that failure to pay does not amount to a breach of contract. I have considered the authorities upon that question, and it seems to me that much depends upon the question of their application to given situations, and while nonpayment might not amount to a breach in some situations, still, looking at the question as a practical one, it must be apparent that a party engaged in the woods and carrying on operations of the kind involved here might under certain circumstances be prevented from going forward if the party with whom he had the contract failed to make payment according to its terms; and the referee having found in this case that the plaintiffs were unable to perform the contract because of the failure of the party with whom they were operating to make payments in conformity to their agreements, I find and rule that such failure was a breach which justified the plaintiffs in not performing what the referee finds they were unable to perform because of the failure of the defendant to do what it should have done. It would seem that the authorities which distinctively apply themselves to a situation like this sustain such a view.

[4] The findings of the referee that the defendant was guilty of a breach of contract, and, in effect, that the plaintiffs' abandonment of the operations was warrantable, are approved, and I rule that under such circumstances the plaintiffs are entitled to recover under their quantum meruit count, and to this the defendant has an exception.

[5] I have not, however, discovered any plain principle upon which the right to recover for permanent improvements made by the subcontractors inures to the plaintiffs; therefore the judgment in No. 555 should be for $5,523.02, which covers the value of the beneficial improvements made by the plaintiffs themselves, and to this ruling the plaintiffs have an exception.

If the finding of the referee in respect to the breach on the part of the landowner is to stand, many of the exceptions and requests of the defendant become wholly immaterial, and an examination of the exceptions and requests of the respective parties has not disclosed any

substantial reason for either setting aside or recommitting the report. It is possible that some of the rulings in the course of the trial involved technical error, but it is not perceived that substantive rights would be violated by a refusal to set aside or recommit the report upon that ground. The exceptions on both sides are overruled, subject to the right of the parties to raise such questions about them as they may desire for the Circuit Court of Appeals.

[6] Now, as to cases numbered 556 and 569, in these cases, which were considered together by the referee, the accounting and findings were made upon the theory, if I understand the cases correctly, that, the plaintiffs having justifiably ceased operations, they were entitled to recover for things done according to contract prices and values established by the parties themselves. This would seem to be the correct view.

In the familiar case of Britton v. Turner, 6 N. H. 481, 26 Am. Dec. 713, the plaintiff was the one who broke the contract, and, breaking away from the old rule that a party who had not fully performed his contract could not recover at all, it was there held that one breaking a contract might recover for benefits, if there were any above damages, resulting from nonfulfillment.

In the cases at bar, the plaintiffs were not the party at fault, and the nonfulfillment resulted from the fault of the defendant, and the theory upon which the referee made his finding as to the amount due is sustained, and to this ruling and finding the defendant has an exception.

In these two cases, as well as in case No. 555, the finding being that the operations ceased by reason of the fault of the defendant, a finding which is sustained upon this hearing, it follows that the defendant has no standing in respect to its position under the doctrine of recoupment.

Upon the referee's accounting, he finds a balance of $27,883.18 due the plaintiffs in the two actions numbered 556 and 569, with interest from May 2, 1908. There is apparently nothing in the record which enables me to determine what part of the $27,883.18 should go into judgment in the respective cases. It may be quite immaterial as to how it is apportioned. If it is material, Burns P. Hodgman is appointed commissioner to ascertain what part of the $27,883.18 should be entered in No. 556, and what part in No. 569.

Let judgment be entered in No. 555 for $5,523.02, with interest from the date of the writ, and let judgment be entered in Nos. 556 and 569 for $27,883.18, in accordance with the apportionment to be made by Mr. Hodgman, with interest from May 2, 1908.