## ROBERTS v. SOUTHERN SURETY CO.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2841.

502

John H. Manning, of Raleigh, N. C. (J. S. Manning, of Raleigh, N. C., on the brief), for appellant.

Samuel W. Ruark, of Raleigh, N. C. (Robert Ruark and Ruark, Fletcher & Ruark, all of Raleigh, N. C., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. One Ashby contracted with the North Carolina state highway commission to construct a certain road, designated as project No. 484. The Southern Surety Company became surety for Ashby in the amount of $128,560.00. Ashby's contract was dated in the year 1922. Subsequently Ashby defaulted on the contract, and upon his default the surety undertook to complete the contract. Later Ashby was adjudged bankrupt.

The appellant, S. J. Roberts, contracted with one Dean, agent for the appellee, to do certain work on both the north and south ends of project No. 484. The contract originally entered into between Roberts and appellee was in writing. In January 1925, the Southern Surety Company filed a bill of complaint against Ashby and others, in the District Court of the United States for the Eastern District of North Carolina, seeking the settlement of matters arising from the Ashby contract. Appellant, Roberts, filed an answer to the bill of complaint in this action, and the questions involved in this appeal arise only in the settlement between Roberts and the surety company.

The court, in March 1925, entered an order referring the cause to one A. J. Templeton, as special master, to hear evidence and determine the issues involved. The special master heard the evidence of numerous witnesses, and on October 25, 1927, reported to the judge below, making certain findings of fact and law, and reporting that appellant, Roberts, should recover $1,465.69 from the appellee. Exceptions were filed to the report of the special master by both appellant and appellee, and on hearing the learned judge below reversed the findings of the special master, and entered a decree dated September 15, 1928, to the effect that the appellee recover from Roberts, appellant, the sum of $3,261.20, with interest from September 19, 1924. The court also ordered that appellant, Roberts, should pay certain portions of the costs of reference to the special master.

In overruling the findings of the special master, the court below gives no reason for the conclusion reached by him, but in the decree simply enters his findings.

"Findings of fact by a master may not be set aside, in the absence of convincing evidence to the contrary." Curtice Brothers Co. v. Barnard (C. C. A.) 209 F. 589.

"The finding of a tribunal, whether it be a master, a referee, or a judge, who sees and hears the witnesses and is in the environment of an oral hearing, is entitled to great weight, and great caution should be exercised by any tribunal having the authority, or being under the duty to review such finding, in disturbing it." Fernald Woodward Co. v. Conway Co. (D. C.) 229 F. 819.

"Where there is a real or apparent conflict between findings of master and those of trial court, appellate court has duty to examine evidence and determine facts for itself." Armstrong v. Lone Star Refining Co. (C. C. A.) 20 F.(2d) 625.

"That the master, whose findings were set aside by the trial court, heard and saw the witness who testified, cannot be disregarded on appeal from the decree entered by the court on its findings." Dorrance v. Dorrance (C. C. A.) 264 F. 54, certiorari denied 254 U. S. 654, 41 S. Ct. 216, 65 L. Ed. 459.

In the instant case it would, therefore, seem to be the duty of this court to examine the evidence offered and determine the facts for itself, bearing in mind the proposition above laid down, to wit: That the master whose findings were set aside, heard and saw the witnesses who testified, and his conclusion cannot be disregarded on appeal.

In dealing with exceptions taken to the master's report in matters of fact, "conclusions of the master, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified unless there

clearly appears to have been error or mistake on his part." Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664.

The conclusions of the master in matters of fact "have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part." Callaghan v. Myers, 128 U. S. 617, 9 S. Ct. 177, 32 L. Ed. 547.

"The Circuit Court of Appeals suggested doubts respecting the honesty of defendants' motives in seeking or in acting upon advice of counsel; but we cannot ignore the finding of the master explicitly to the effect that the locators proceeded in 'moral good faith.' His finding was made after hearing and seeing the witnesses and, having support in the evidence, will be accepted here. See Adamson v. Gilliland, 242 U. S. 350, 353 [37 S. Ct. 169, 61 L. Ed. 356]." Mason v. United States, 260 U. S. 545, 43 S. Ct. 200, 67 L. Ed. 396.

The condition of the record in this case makes necessary a somewhat laborious examination of the evidence taken before the special master, and a finding by this court as to several items in controversy.

The first question for consideration is whether or not the written contract between Roberts and the surety company was the only contract had between the parties. On this point Roberts testified that in addition to the written contract he had an oral and subsequent contract with Dean, agent for the surety company, as to work not included in the written contract. On this point the master held with Roberts, and reported a finding of fact to the effect that there was an additional oral contract, and that the total price to be paid Roberts for work done for the surety company on project No. 484, was $7,-091.90, being the amount provided for in the written contract, $5,751.90, and an additional $1,340 as provided in the verbal contract. On this point a careful examination of the evidence leads us to the conclusion that the special master was correct in his findings. To hold otherwise would be to hold that Roberts took the contract on the southern end of the project, which included the dressing and finishing as well as other work, for a much less price than that for which he took the contract on the northern end for the dressing and finishing alone, when the cost of dressing and finishing, so far as the evidence shows, would be practically the same on both ends. We think not only the evidence but the circumstances sustain the master's conclusion in this respect. United States v. Newport News Shipbuilding & Dry Dock Co., 34 F.(2d) 100, decided by this court at this term, and authorities there cited.

The next item to be considered is the one charged to Roberts by the surety company for the amount claimed to have been paid the Public Service Production Company for the completion of Roberts' contract. The evidence as to the amount of work done on the Roberts' contract by the Public Service Production Company is vague and unsatisfactory, and not at all sufficient upon which to allow the surety company's contention that it paid $4,432.56 or any other definite sum for this particular work. Not only that, but, as held by the special master, Roberts moved practically all of his equipment to another contract in Beaufort county on the request of Dean, agent for the surety company, and under Dean's instruction. Dean as agent for the surety company was also interested in the Beaufort county work. There is no evidence that at the time of the removal of the equipment it was considered an abandonment or default of the contract or that there was any request of Roberts by Dean to return and complete the work. After Roberts moved his equipment and went to work on the Beaufort contract, heavy rains fell in July and August, and badly damaged the work already done by Roberts; but there is no evidence that Dean, who saw Roberts frequently, ever notified him of this damage, or gave him the opportunity to repair it, or requested him to do so, and we think the special master was entirely right in finding that Roberts should not be charged with this item, $4,432.56, alleged to have been paid the Public Service Production Company.

The special master holds that Roberts had not entirely completed his contract when requested to move on to the Beaufort county work, and finds that he is properly chargeable with the sum of $270 as the amount that would have been necessary to have finished the work. As to these findings, we think the special master was right.

Another item in dispute is $850 charged Roberts for certain equipment sold him by the surety company, and for which he agreed to pay that amount. This equipment afterward became involved in litigation between the surety company and Roberts in Beaufort county, litigation arising over differences that occurred over the work there. With this litigation we have no concern in the instant case. It is admitted that Roberts bought the equipment from the surety company and agreed to pay the $850 for it. The learned judge below was correct in charging this item to Roberts.

It is apparent, and is admitted by all par-

ties, that the special master erred in the amount he finds to have been received by Roberts. He fixes this amount at $5,751.90, when Roberts only received, exclusive of the $850 item above discussed, $3,950, the amount found by the judge below to have been paid Roberts, and an examination of the record shows that this latter was the correct amount.

We find that the account between Roberts and the surety company should rightly be as follows:

| | |
|---|---|
| Total written contract price | $5,751 90 |
| Verbal contract for dressing and finishing shoulders on south end | 1,340 00 |
| Total | $7,091 90 |
| Less amount found by special master as reasonable expenditure for completion | $ 270 00 |
| Less cash paid to Roberts | 3,950 00 |
| Less charge for equipment sold Roberts | 850 00 |
| Total | $5,070 00 |
| Balance due Roberts from surety company | $2,021 90 |

Roberts should have judgment for this amount against the surety company, with interest from September 19, 1924. There is no evidence in the record that would justify this court in holding that the proportion of the expense of the hearing before the special master, properly chargeable to Roberts, is incorrect, and that proportion of the expense as fixed by the judge will be paid by Roberts.

Reversed.