## CONTINENTAL CORPORATION v. NATIONAL UNION RADIO CORPORATION et al.

### No. 4905.

Circuit Court of Appeals, Seventh Circuit.

Dec. 21, 1933.

Albert J. Fihe, of Chicago, Ill., for appellants.

Jess S. Raban, of Chicago, Ill., and William L. Bowman, of New York City, for appellee.

Before SPARKS, FITZHENRY, and PAGE, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a decree in favor of appellee in an action commenced by it for trade-mark infringement, and for unfair competition. It confirms the report of the special master enjoining appellants Jackson and Continental Corporation from using the trade-name "National Tube Mfg. Co." and from using the word "National" as a trade-mark on radio tubes. It also dismissed the cross-complaint of appellants.

The bill for trade-mark infringement and for unfair competition was filed August 27, 1931. Appellants answered and filed their cross-complaint. When issues were joined the cause was referred to a special master to take evidence and make findings and recommendations. After hearings the special master prepared his report. Upon exceptions to the master's report and after further argument, the special master made some few changes in his findings and conclusions of law. The final report was filed; appellants filed their exceptions to it, and upon a hearing by the court the findings and holdings of the special master were adopted and appellants' exceptions overruled. A final decree was entered.

The special master's findings of fact were very minute and carefully made. The gist of the findings is that appellants bought radio tubes in the open market wherever they got the best prices, graded them themselves as firsts and seconds; the highest types were graded "A," or, "Firsts"; the second grade was "B"; and the poorer qualities given other grades; that "National" was the grade-mark used by appellants on second grade, "B," tubes. In other words, that with appellants the word "National" was a grade-mark and not a trade-mark; that their advertising and methods of doing business were unfair and appellants were guilty of unfair competition, as charged in appellee's bill of complaint.

Respecting the trade-mark infringement, appellants admit that the radio tubes manufactured by appellee are sold under the trade-mark of "National Union" with "National" marked in prominent type or design and "Union" in minor type or design, and its tubes are generally known among jobbers, distributors, set manufacturers, and radio set users as "National" tubes. That the trade-mark is affixed to all radio tubes and packages containing appellee's products; that the trade-marks "National" and "National Union" are an arbitrary designation and were selected and adopted by appellee and its predecessor in interest in or about the year 1926 to designate the goods marketed by appellee and its predecessors; that these trade-marks have been continuously used by appellee and its predecessor from the beginning; that appellee and its predecessors have sold millions of dollars' worth of radio tubes bearing the trade-marks "National" and "National Union" in the city of Chicago and elsewhere throughout the United States; that the trade-mark "National Union" was officially recognized by the granting by the United States Patent Office of a trade-mark bearing said words on August 4, 1931.

Appellants do not deny any of the allegations of paragraphs 10, 11, 12, and 13 of the bill showing appellee was capitalized for 1,000,000 shares at no par value, which were offered and sold to the public at $40 per share; that said capital stock is listed upon the Chicago Stock Exchange and New York Curb Exchange, and the company is one of the leading tube manufacturers, both financially and in volume of business; that by reason of the high standard of merit, quality, and excellence of appellee's tubes, it has become one of the leading manufacturers of radio tubes in the United States and throughout the world, and has built a large and valuable business and good will throughout the United States and foreign countries.

That by reason of the superior quality and workmanship of appellee's radio tubes sold under the trade-mark "National" and "National Union," numerous radio set manufacturers have adopted said tubes exclusively for their radio sets and that all radio tubes are manufactured and distributed under a license granted by the Radio Corporation of America and pursuant to the patents owned and controlled by said corporation; that not only has appellee spent hundreds of thousands of dollars in advertising "National" and "National Union" tubes in the United States and elsewhere, but that many of its jobbers, distributors, etc., have spent sums aggregating in excess of a million dollars, so that the public has come to look upon "National Union" and "National" tubes as the outstanding independent radio tube manufactured in the world.

The bill alleges that as of July 21, 1931, appellee for the first time had any knowledge that the National Tube Mfg. Co. was advertising and selling a radio tube under the name of "National" and immediately gave written notice of infringement and of violation of its rights and that appellants refused to desist from using said trade-mark "National."

940

Allegations respecting unfair competition are to the effect that appellants were falsely palming off their goods as and for appellee's; unfairly relying upon the reputation of and demand for appellee's tubes · by the public; selling "National" tubes at twenty-five cents each, which was less than cost of appellee's tubes, and advertising in such a way as to cause the public generally to be deceived, thus working irreparable injury to the commercial and financial standing of appellee. These allegations were denied.

All of appellee's allegations contained in its bill and many more facts respecting unfair competition which were unknown to appellee at the time the bill was drawn were conclusively proved to the satisfaction of the special master, as is shown by the findings of fact contained in his report.

The counterclaim and cross-complaint for alleged trade-mark infringement on the part of appellee claims damages of $500,000. It sets forth innumerable allegations of fraud, deceit, slander, and libel on the part of appellee respecting which no evidence was offered before the special master although these allegations were verified by appellant Purvis D. Jackson.

On the best information and belief available, appellee alleged that Purvis D. Jackson and Continental Corporation, an Illinois corporation, were doing business under the firm name and style of National Tube Mfg. Co., which allegation was admitted by the answer.

In the counterclaim the cross-complainants vary. In the opening paragraph they are "Purvis D. Jackson and Continental Corporation, a corporation doing business under the firm name and style of National Tube Mfg. Co."; in another paragraph the cross-complainant is "Purvis D. Jackson doing business as National Tube Mfg. Co." The answer is signed by Purvis D. Jackson as an individual, Purvis D. Jackson operating as National Tube Mfg. Co., Continental Corporation by Purvis D. Jackson, president. The verification is by said Purvis D. Jackson in these three capacities, and the three signers are specified as cross-complainants.

The testimony regarding these allegations proved conclusively that Jackson did business as the National Tube Mfg. Co. although he did say that Continental Corporation "owns" said company. Appellants claim they had "built up a valuable and lucrative business" under the "National" trade-mark and that appellee, National Union Radio Corporation, and its predecessor, Sonatron Tube Company,

have since about 1927 "sold within the Northern District of Illinois, Eastern Division, and other parts of the United States, radio tubes with trade-marks 'National' and 'National Union,' with the intent to deceptively palm off its goods upon the purchasing public as and for appellants' goods," etc. Notwithstanding this admitted knowledge of the use of the trade-marks by appellee and its predecessor, there is no allegation in the cross-complaint of any notice of protest on the part of any of the cross-complainants to either appellee or its predecessor, Sonatron Tube Company, calling attention to appellant's alleged trade-mark "National," or its infringement, and none shown in the evidence.

The findings of fact set forth in the report of the special master are most comprehensive and give a good general statement of the important and essential facts. However, there are numerous detailed facts which are not contained in said findings, but which become important in view of the claims set forth in appellant's brief. Some of these detailed facts are herewith given.

Appellant Purvis D. Jackson has been known as a radio tube broker in Chicago since 1922. He had done business chiefly through several unincorporated company trade-names, none of which were ever registered. Prior to June, 1928, all radio tubes sold by him and his various companies were apparently purchased wherever tubes could be bought the cheapest. Jackson also made a practice of buying boxes or cartons from failing concerns, or which he could buy cheaply without regard to the names thereon. All radio tubes bought by him were graded according to his own standards, Grade "A" or "firsts," Grade "B," etc. The grade of tubes sold under the same name often varied in different years, depending upon demand and other conditions.

Respecting the use of the word "National" by said Jackson and his numerous companies, the evidence indicates that between October, 1924, and March, 1925, Jackson, doing business under the trade-name of Continental Sales Corporation, sold a few hundred of type 201A, cheap priced, B Grade or second grade tubes, to the National Radio & Electric Company of Hammond, Indiana, which were labeled "National."

It is undisputed that at no time were any tubes manufactured as "National" or the word "National" branded on the base of any tubes sold by appellant Jackson, or any of his companies, as is customary in the trade. After November, 1925, when the first labels were ordered, the word "National" in script was

pasted on all tubes. This Continental Sales Company went out of business in the spring of 1926. There is no evidence that its business, good will, or any rights to the word "National" were transferred to any other company or corporation.

In January, 1926, appellant Jackson began to do business under the name of National Tube Mfg. Co. This company never manufactured any radio tubes. After selling slightly over a thousand tubes in the first four months of 1926, solely of type 201A and a cheap priced, Grade "B" or second grade tube, no further sales were made by this company until September. The box at this time specified: "National The Quality Tube;" "National, Model N 201A, Detector and Amplifier;" "National Tube Mfg. Co., Chicago, Ill.," among other data.

The Sonatron Tube Company, a corporation of Illinois, with its manufacturing plant in Chicago, commenced to use the word "National" for all types of tubes manufactured by it in 1926, and, although the evidence does not show the month these sales commenced, it is reasonable to suppose it must have been prior to September, because that is the time when the seasonal sale of radio tubes commence to increase in volume. The Sonatron Tube Company commenced to use this name because of its fear that it might lose the use of its trade-mark "Sonatron" by reason of litigation commenced against it by the Sonora Phonograph Company which owned the trade-mark "Sonora." Its use of the name "National" in the sale of all types of radio tubes was continuous and sales were made in the thousands each year until the Sonatron Company was merged in the appellee company, in August, 1929. At this time the appellee company continued to manufacture and sell all types of the highest quality tubes under the trade-name "National" until it selected its new trade-mark "National Union," in December, 1929, to accord with its corporate name.

After its incorporation as of February 15, 1926, the Continental Corporation, all of whose stock was owned by appellant Purvis D. Jackson, until April, 1929, began to make some sales of type 201A, Grade B radio tubes under the name "National." This corporation continued to make some sales until April, 1930. The sales of these "National" tubes were less than 10 per cent. of the total sales made by said corporation.

Jackson testified that the Continental Corporation "owns" the National Tube Mfg. Co. Admittedly the Continental Corporation was owned by the Marvin Radio Tube Company, a Delaware corporation of Irvington, N. J., from April, 1929, when it acquired all of the stock from appellant Jackson, until said corporation became insolvent in the early spring of 1931. Although appellant Jackson testified that the stock of said corporation was now in his name, his holding of this stock is pursuant to an uncompleted contract of purchase with the party who bought the assets of the Marvin Company in bankruptcy.

Some of appellants' second grade tubes, under the name of "National," were sold in 1925 by the Pearson Company and by the Universal Electric Lamp Company of Illinois, in 1929, each of which had the same address as the Continental Corporation in Chicago. Sales were also made by the Universal Lamp Company of Newark, N. J., in the latter part of 1929 and early part of 1930, which company was a subsidiary of the Marvin Radio Tube Company. The conditions under which these sales were permitted are not shown by the evidence.

National Tube Mfg. Co. made sales of tubes from September, 1926, continuously, in very small amounts, until February, 1929. Its sales for the entire year 1927 were only 3,506; for 1928, only 1,802; and for 1929, only 465. It made no sales in 1930 and none in 1931 until April, when it commenced to make sales again by reason of a circular which was sent out by appellant Jackson after he got back to Chicago following the failure of the Marvin Radio Tube Company. It was this circular which, upon coming to the notice of appellee first on July 17, 1931, caused the writing of the notice of infringement and unfair competition, dated July 21, 1931. None of the sales made by said National Tube Mfg. Co. during April to October, 1931, were to customers to whom they had made sales in any previous years. The repeat orders by customers of said alleged manufacturing company during the previous years were so few as to be negligible.

The name National Tube Mfg. Co. does not now appear anywhere in the building or office which is the office of that company, nor has it appeared in said building since appellant Jackson moved there in May, 1928. Most interesting also is the testimony of three officers of the Triangle and Atlas Companies, which were the largest purchasers of National tubes from the Continental Corporation, that they had never heard of this tube manufacturing company or its "National" tubes although they have lived and been in business in Chicago all of the time during its existence.

The special master recommended that a decree be entered providing the following:

"1. Granting the relief prayed for by the plaintiff National Union Radio Corporation in its bill of complaint by

"(a) Enjoining the defendants, Purvis D. Jackson and Continental Corporation, doing business under the name and style of 'National Tube Mfg. Company,' from using the word 'National' on radio tubes and from continuing the advertising and representations with respect to such business, whether by advertisements in radio or other magazines or papers, or by representations on cartons or otherwise, as complained of in the bill of complaint, or in any other similar form or forms, which will tend to confuse or deceive others into believing that the tubes thus being advertised are those of the plaintiff National Union Radio Corporation;

"(b) Enjoining said defendants from conducting their business under the name and style of 'National Tube Mfg. Company';

"(c) Enjoining said defendants, doing business as Continental Corporation, from using the word 'National' on radio tubes except as a brand or grade mark on tubes of inferior quality, known as Grade B or 'seconds' and then only when such tubes are plainly so marked and advertised;

"(d) Awarding the plaintiff National Union Radio Corporation such damages as it may show it has suffered to its business as a result of the acts of the defendants so complained of;

"(e) Awarding the plaintiff its proper costs herein.

"2. Denying the relief prayed for by the defendants in their cross-complaint and dismissing said cross-complaint for want of equity."

However, paragraph 2 of the decree perpetually enjoins Purvis D. Jackson and Continental Corporation, or either of them, their officers, agents, clerks, etc., from using the word "National" in their business of handling and selling radio tubes, while the recommendation of the special master 'was that Jackson and the Continental Corporation, doing business under the name and style of "National Tube Mfg. Company," be enjoined from using the word "National" on radio tubes, etc., in such manner as might tend to confuse or deceive others into believing that the tubes thus advertised are the tubes of the National Union Radio Corporation; nor does the decree make provision for the recommendation of the special master contained in item (c), paragraph 1, as follows: "Enjoining said defendants, doing business as Continental Corporation, from using the word 'National' on radio tubes except as a brand or grade mark on tubes of inferior quality, known as Grade B or 'seconds' and then only when such tubes are plainly so marked and advertised."

A trade-mark is created chiefly by use which must be general, continuous, and exclusive and applied to goods and used in trade under such circumstances of publicity and length of use as to show an intention to adopt the mark for specific goods and to have become known as the distinguishing mark for such goods. In re Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; Bennett & Sons v. Farmers' Seed & Gin Co. (C. C. A.) 288 F. 365; Coty, Inc., v. LeBlume Import Co., Inc. (D. C.) 292 F. 264; Nims, The Law of Unfair Competition and Trademark, § 186; 38 Cyc. 692, note 67.

Applying this rule, the special master found that appellee had a valid, existing trade-mark and that appellants have not.

It is inseparable from the good will and cannot exist in gross. United Drug v. Rectanus, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141.

The special master correctly found that where a party uses its company name and address with a mark which primarily distinguishes the grade or quality of the article, then said mark cannot be a technical trademark and is known as a grade-mark. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993.

It was clearly the purpose of the special master in his findings and holdings to give appellants the full benefit of every right belonging to them by reason of the marking of the B grade of radio tubes as "National." However, the mere use of the word "National" as a grade-mark by appellants did not prevent appellee from securing trade-mark rights in the same word for its radio tubes of highest quality; but the rights of appellants in the limited use of the word should be safeguarded in a decree in line with the recommendations of the special master.

The findings of the special master in the premises are well sustained by the evidence; the District Court properly overruled the exceptions to his report and should have entered a decree in harmony with that report. The evidence having been heard by the special master and he having seen the wit-

nesses and examined all of the exhibits admitted in evidence, and the court having affirmed the findings of the special master, this court is not at liberty to disregard it, and can go no farther than to see that a decree in harmony with the findings and holdings thus approved is entered. Citizens' Nat. Bank v. Donnell, 195 U. S. 369, 25 S. Ct. 49, 49 L. Ed. 238; Curtice Bros. v. Barnard (C. C. A.) 209 F. 589; Gay Mfg. Co. v. Camp (C. C. A.) 65 F. 794; General Finance Corp. v. Keystone Credit Corp. (C. C. A.) 50 F.(2d) 872.

Under the findings of fact of the special master appellants are not entitled to an injunction as prayed in their cross-complaint, and it was properly dismissed.

The decree of the District Court will be reversed, and the cause remanded, with instructions to set aside the decree heretofore entered and to enter a decree in harmony with the recommendations of the special master.

Reversed and remanded, with directions.